Morning, Counsel. Morning, Your Honors. May it please the Court. Jeff Townsend, appearing for Appellant and Plaintiff, Kenneth Eau Claire. In this appeal, there are three issues. The first issue is whether Home Depot USA, Inc. was a co-employer of Mr. Eau Claire. The second issue is whether the Home Depot defendants restored or returned Ken Eau Claire to his pre-leave position following his leave of absence. And the third issue is whether Home Depot, or specifically Michael Snyder, considered Ken Eau Claire's leave of absence as a negative factor in its decision to terminate him. So the first issue that I'd like to address is the employment issue. Home Depot, as the moving party on its motion for summary judgment, had the burden of submitting proof or evidence by way of affidavits, discovery responses, that it was entitled to judgment as a matter of law on the issue of employment. Home Depot's motion on this issue consisted of a single sentence. The sentence was, quote, Eau Claire has alleged that Home Depot USA, Inc. was his employer, which Home Depot USA, Inc. has denied. That was it. There was no factual argument. There was no legal argument. There was no legal authority. Nothing was submitted to show in any way what the and Mr. Eau Claire. Home Depot, therefore, did not meet its burden of going forward. The motion should have, on that issue, should have been denied. In response to that, however, Mr. Eau Claire submitted a couple of documents. One of the documents that he submitted was the application for employment. And the application for of the records. And right there on the top of the document, Home Depot USA, Inc., application for employment, filled out by Mr. Eau Claire. So the application he filled out clearly states it's from Home Depot USA, Inc. The other document is the confidentiality agreement that he signed when he started his employment with Home Depot USA, Inc. That confidentiality agreement, again, up at the top center of page, indicates that it is from Home Depot USA, Inc. The document states, this agreement is made between Home Depot USA, Inc., per in, called, quote, Home Depot, end quote, end per in, and Ken Eau Claire. And it says, you understand and acknowledge the following facts. You are employed by Home Depot. And again, you go back up there and who's Home Depot? Home Depot is Home Depot USA, Inc. So the only evidence that was properly before the court regarding this issue unambiguously provides that Home Depot USA, Inc. was the employer. Home, Home Depot, in their response brief to this appeal, states, I believe it on page three of their response, that it is not disputed that THD determined Eau Claire's rate of pay, that THD managers supervised Eau Claire, and THD maintained his records. Well, the only reason it's not disputed is because the first time it was brought up was in the reply. So the issue wasn't brought up in the motion. Ken Eau Claire wasn't given a notice and opportunity to respond to any of those allegations. Again, because it was never raised in the motion. The court, the district court, in its decision, really doesn't go into any detail about how it reached the conclusion that Home Depot USA, Inc. was not an employer. I think it's clearly an error of law that, you know, the only, again, the only, Home Depot never submitted any evidence to support its position. The only evidence before the court was to the Let's go into the detail here. If I read correctly, your client in his deposition indicated that terminating appointments and so on was inexcusable. I forget the exact language you used and so on. Why wasn't that an independent ground for termination, having nothing to do with the FMLA? Okay, the only reason he canceled the appointments is because he had to go on leave. So he is a one-man show in Boise. There's no other sales consultant for 200 miles around. Understand. Nobody to cover his appointments. So I'm a sole attorney. So if I, you know, break my leg and I can't cover, go to any of my appointments for a month and I've got to tell everybody, hey, I can't handle your case for a month, people are going to be upset. So yes, it is bad business if you can't see, if you can't see people for a month. But if I understand correctly, he didn't contact his supervisor, didn't tell anybody. He just canceled all these things. And in his deposition, he said that they basically this is atrocious. You can't do this. You're going to lose all these clients. Now, is, is not that an independent reason for, uh, the defendant in this case to be upset? Absolutely. An independent basis for terminating his employment? No, it's not. Why is that? Because what he did is exactly what the policy and procedures work. So in his deposition, they testify there's no written policies, there's no training, nothing of what a salesperson is supposed to do when they go and leave for a month. They got a calendar of appointments, nothing saying what you're supposed to do. Uh, Sharon Lewis, who's the HR guru for these Home Depot entities, she didn't know what the correct procedure was. So she calls or emails Antonio. And Antonio's the manager of the call center. Okay, what's the procedure when you got to go on leave for a month and you have a month worth of booked appointments? Antonio says, well, best case scenario is you get another sales consultant to cover those appointments. So that wasn't But why isn't acting or admittedly acting inappropriately enough? I'm sorry? Why isn't acting or admittedly acting inappropriately enough of a reason for THD for firing this consultant? He did not act inappropriately. He says, yes. Well, he admitted he acted inappropriately. No, I don't think he did. Well, I thought in his deposition, he said it would be totally later, he says, I mean, it comes out that that's exactly what he did. So I understand and it's an interesting question here with respect to the policy and procedure and that there seems to be no formal written policy or procedure. But then it seems that this question, in terms on whether or not his own, you know, admission, which he agreed that it would be totally inappropriate, you know, which looks like the employer thought as well, is enough. Well, I think the distinction is if he's just, yes, if you're just canceling the appointments, not for going on leave, but if you just say, okay, I'm going on vacation, I'm canceling a month's worth of appointments, yes, you don't just cancel a month's worth of appointments if you can avoid it. So the question then becomes, okay, you're going on leave, how now do you handle those appointments? Do you call your supervisor? Sharon Lewis, the HR specialist, said no, he didn't have to call him. Ken Snyder received an email within an hour of Eau Claire being placed on leave, Michael Snyder, the supervisor, received that email from Human Resources saying, okay, Ken's going on leave. So he knew right away, but the manager, he doesn't bother calling him and saying, okay, what are we going to do with these appointments? So Ken now calls the call center, and when Sharon Lewis, again, who didn't know, there is no policy, so Sharon Lewis contacts the call center and asks, what do you do when somebody goes on leave? Counsel, with respect, I'm looking here now at some information from ER 60, which is the deposition, and the question here, so if customers were told that they had to wait 30 days, so you know you have appointments the next week, and those customers were told they had to wait 30 days to be rescheduled for an appointment 30 days out, would you agree that's a major disruption to customer service? Your client's, oh, terrible, terrible, question, and then your client, it isn't, it just isn't done, question, why not? There are things in play, it just isn't done, you don't do that to a customer ever, why? They're just hard to come by, it's just, I just, it's not what we do, and this is important, it's totally against all the principles of Home Depot. So at least in your client's deposition, he indicated that he thought that the principles of Home Depot barred him from doing what he did. So it's different than what you're telling us, you're suggesting there was just no policy, nobody understood it, he says that's not the case. So if that's the case, taking him at his word, isn't what he did an independent ground, separate from the FMLA to terminate his employment. Again, I don't think so, and the reason being is, yes, it is bad, you don't do it, if it can be helped. In his case, it could not, canceling those appointments could not be helped, and canceling those appointments is, their policy is, when you go on leave, you cancel those appointments. The bottom line is, that's not what he said. He said you don't do that, and it's against all the principles of Home Depot. He understood that. I think the question is vague, it doesn't say, if you go on leave, there's no, it's not at least, okay, if you have to go on leave, what do you do when you go on leave? The whole point of the deposition was to talk to him about what he did, why he did it. It's in the context of, why did you do this? And his understanding, and in that understanding, he made it clear that you don't do this, it's totally against the principles of Home Depot. He had an internal understanding, that you don't do that. Yes. Okay, so if that's the case, I get back again to my earlier question, why didn't THD have an independent ground, independent of the FMLA, to terminate your client? Because he violated, in quotes, all the principles of Home Depot, in terminating those appointments. Okay, so that's the question, so then what are, what are the policies? So when you go on leave, and you have a month's worth of appointments, how are you supposed to handle those appointments? Do you sit back and do nothing? So if, let's say that he had done nothing at all, he goes on leave, you now have a month's worth of appointments, when the day of that appointment comes, nobody shows up, and you have a customer sitting there, wow, why hasn't this salesperson showed up and attended their appointment? Because nobody's done anything to cover it. So, as a selling sales manager, he, you typically have sales consultants in your area, and this is what Antonio, this is important, this is what Antonio said, that when you have all those appointments, the first thing you would do is you get another sales consultant to cover them. That is, and why do you get another sales consultant to cover them? Because it's bad business not to attend those appointments. Okay, getting a sales, so, first, your first option is you then get a sales consultant to cover the appointments. Antonio says, well, and if that isn't an option, then you call the customers, and you reschedule those appointments. That's what he, that's what he thought, but No, that's what, that's what Antonio, the manager said. So Sharon Lewis doesn't know what the policy is, so the first, the first thing you want to do is cover the appointments if you can. He couldn't, because he was the only salesperson for over 200 miles. There was not another sales consultant who could possibly cover those appointments. If that's the case, your next best option is to put those, to call the call center, and put those appointments on callback, which is exactly what he did. So he called the call center, says, I, I'm, I'm going on leave for a month, I can't cover these appointments. The call center manager says, okay, who's going to cover them? He says, I don't have anybody to cover them, I'm the only person here. The call center then calls all those customers and puts them on a callback and rescheduled those appointments. So he did not just leave them handling. So that is the only, the only evidence is that when you go on leave, and there's nobody to cover your appointments, you get the call center to reschedule them. That's the only evidence of, of a policy of how you handle going on leave for a month when you have appointments. The only evidence is you. Except for what your client said in his deposition. Well, he, he said it's, he says you, you don't, you don't do it if it could be, if it can be avoided. It could not be avoided. There's no. Don't say that. He you know, what if, what ifs that you've added to it. I understand as a good lawyer, that's what you're saying, but I'm saying that's not what your client said. So then the question is, so, so what, it is bad business. He acknowledges it's bad business to cancel. The question though that the court needs to look at then is, well then what do you do with all those appointments? Is what he did, is putting them on callback a violation of any policy? No. Putting them on callback is exactly what the policy is. If you cannot, if you cannot get to them, the policy is you get a hold of the call center and you put them on callback. And so he followed Home Depot's policy of what you do when you go on leave with a month's worth of appointments. He did exactly what he was supposed to do in preparing to go on his FMLA leave. Okay. Questions by my colleagues? Anybody have questions? Questions? Judge Corman? All right. Thank you, counsel. Let's hear from THD. Good morning. May it please the court, Christine Lamb on behalf of the Apley Home Depot. Good morning. Pardon my voice, I'm recovering from a cold, so I'll need my water. The issue that your honors were just addressing is the crux of this case. The issue is whether or not the district court erred in finding that Mr. Eau Claire failed to show that the FMLA leave was a negative factor in his termination. The evidence in this case was powerful and overwhelming because Mr. Eau Claire himself admitted, when I took his deposition, that doing exactly what he did would be, quote, a major disruption in customer service and terrible, terrible, and would not be done. To be honest, I was surprised that he gave that testimony during his deposition, because that is exactly what he did. He also said in his deposition that the policy he violated and the policy he was fired for violating was good customer service. But let's talk about the policy, because I'm not quite sure you have one. Did the So let me ask you first, did you think that Mr. Eau Claire followed the leave of absence? I'm going to call it protocol, because there's nothing written from what I can see or nothing was offered in writing regarding a policy or procedure. So did he follow this leave of absence protocol that Miss, I think it was Sharon Lewis, I outlined in her email? It seems like Miss Lewis' email appears to explain that a THD employee seeking FMLA leave or any leave of absence could ask the call center to reschedule appointments if asked to, which is what appears he did here. So I'm struggling a little bit to how he broke this protocol and also the fact that there was no written policy. There is no written policy on what you are to do with customer appointments when you go on FMLA leave, that's true. There is a written policy on customer service, and Mr. Eau Claire testified and everyone in this case testified. What is the written policy on customer service that he violated? Customers first, that customer service is our number one priority. But there's no specific actual steps of what you're to do, or tell me if I'm wrong, on how do you not violate the customer service in this circumstance? The only thing in writing is, as you mentioned, the email from Sharon Lewis, which says the first choice is to reassign the customer appointment to another sales rep. That is exactly what the supervisor was doing. But did he know, I mean, where do you show that that was given to him? He was fully informed of that before, you know, when he got employed or certainly before this all happened. There is not a specific procedure in writing that details how the employee who's going on leave should reschedule the customer appointments. There is only the put customers first, and of course that you have a supervisor who is available to you by text, by phone, by email to call and say I'm going on FMLA leave and I have a number of appointments. He never did that. Frankly, it would have been better if he just did nothing, because then his supervisor was already working on having another sales consultant come from here, from Portland, to Boise. He arrived the very next day, David Wright, and he covered as many of those appointments as he could. That was, as the email says, the first choice. So the first choice was actually being implemented. As soon as the supervisor got notice that he was going on leave, choice number one was pull somebody from Portland to Boise to cover the appointments. That way the customer service is not interfered with or disrupted. Mr. Eau Claire took it upon himself to interfere with that process by calling and canceling all the appointments. So when Mr. Wright showed up from Portland to cover the appointments, they were gone. They were canceled. So what was the reason? Why did you fire him? He was fired for the poor customer service, for calling the call center and saying put all of these appointments 30 days out so I can attend to the appointment when I return from leave. He was fired because he called customer service to put those appointments 30 days out. Correct. But you agree there's nothing in any writing telling him not to do that? Only the customer service policy that is in the item. So the answer to my question is? There is not, again, there is not a specific procedure on the steps that an employee needs to take. And, in fact, what Ms. Lewis, I guess, wrote says THD employee seeking FMLA leave or leave of absence could ask the call center to reschedule appointments if asked to. Which is what he did. Which is what he did. So how did he violate the customer service protocol? Because the first choice is to just have no disruption in that customer appointment by having another sales consultant attend to the appointment. Doesn't that seem confusing? It's not confusing for you? I don't find it confusing. Using the example of counsel, if he's not available to attend to his clients or if I'm not available to attend to my clients, I'm not going to just say I'm sorry, your case can't be looked at for 30 days. I have someone else attend to my appointments. That's common sense and I think fits with the customer service policy. What he did was take that affirmative step to go in and move the appointment to 30 days out so he could personally benefit from the sale of the appointment. That's not putting the customer first. That's putting himself first. Counsel, what, in this situation where we're talking about FMLA leave, who has the burden of proof in a case like this to show that the motivation for terminating him was his action with respect to the customers? Under the Batchelder v. America West Airlines case, it is the employee's burden by preponderance of the evidence to show that FMLA leave was a negative factor in the termination. And the employer's? The employee. The employee, okay. The employee has to prove it by preponderance of the evidence. That is the law that correctly was cited by the district court below and applied, as well as the Gambini case, which holds that the FMLA leave isn't a negative factor in termination. If the employer would have made the same decision had the employee not taken leave. So the important part here is, had the employee not taken the FMLA leave, would Home Depot have made the same decision? If the person had just canceled all of these customer appointments, maybe it's not FMLA leave, would they still have terminated him? And I think Mr. Eau Claire's own testimony in this case shows that they would have. Is there any evidence that anyone from THD or Home Depot mentioned his leave taking in connection with his termination? None whatsoever. In fact, the timeline shows that it was really the cancellation of the customer appointments. The supervisor learned of the leave on October 7th at around noon. The reaction to learning of the leave was to call the employee in Portland and get them to cover the appointments. It was not a reaction of, let's terminate. It wasn't until the following day when the supervisor learned that the appointments had been canceled that he said, this is a major violation of our customer service policy. So the timing actually shows the opposite, that it wasn't the leave that caused it. It was the finding out what he had done to the customers that caused the termination. As I recall, there was some evidence of a number of customers that were in quotes lost because of the actions taken by the appellant in this case, is that correct? That is correct. Although the testimony was also that just the fact of the cancellation probably would have been enough, but it is true that a number of customers were lost. It took Mr. Wright, David Wright from Portland, a day to get down to Boise. A number of the appointments, when a customer has called and said, we're sorry, and then someone from Portland calls, they don't end up actually having the appointment or making the sale. So a number were lost. Is there any evidence in the record to the effect that Mr. Eau Claire and his supervisor had any ongoing contra-tomps? Mr. Eau Claire was on a final warning for failure to close his sales. The sales consultants are evaluated on the close rate, how many closed deals do you have versus the number of appointments that you attend. His close rate had been repetitively low, and so he had been given three warnings on having a low close rate. On his third warning, it was a final warning, and that is when he requested the FMLA leave. So there is independent evidence that before the FMLA leave was taken that he was on a road to termination, basically, right? Correct. And is there any evidence in the record that he took the FMLA leave in part to address the three warnings? Only the timing. Only the timing, okay. Yes. Where in the record is this evidence of the three warnings? If you have it off the top of your head there. It is in the record. It's at record 95 and subsequent pages. ER 95? Correct. Thank you. If there aren't any further questions on that issue, I'd like to briefly address the correct employer. Okay. The Mr. Eau Claire is incorrect about the burden of proof on establishing joint employer relationship. Under the Moreau versus Air France case, it is Mr. Eau Claire's burden to establish joint employer liability, which is what he's attempting to do in this case. He's attempting to have both THD, the Home Depot, and Home Depot USA liable as joint employers. And the burden of proof to establish joint employer liability is on the plaintiff. He indicates that in the motion, I believe he said it was in the motion for summary judgment, that basically that THD and Home Depot provided really no evidence about employment that he, by contrast, did show that some of the initial documents through which he was employed did mention Home Depot. What's your response to that? That's correct because of the burden issue. So the initial motion was he failed to meet his burden because he presented no evidence. He then produced some documents, some forms, and then Home Depot provided a declaration of an employee who outlined the two separate entities. He also, in his deposition, testified that he was supervised by THD. So basically the meager evidence he referred to was only a tiny part of what Home Depot provided. Correct. To the court, right? That's exactly correct. Thank you. If there are no further questions. Any other questions by my colleague? Okay, I don't think so. I think you might have a little time left, counsel. I'm not sure. I guess you don't. So I think we're in good shape. Thank you both for your argument. We appreciate it. The case just argued is submitted and the court stands in recess for the day.
judges: M. Smith, Murguia, Korman